IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **EUGENE GREGORY DEWS** | : | **CIVIL ACTION** |
| | : | |
| v. | : | NO. 14-3048 |
| | : | |
| **PA. DEPARTMENT OF CORRECTIONS,** | : | |
| *et al* | : | |

**MEMORANDUM OPINION**

**Savage, J.**                                                                                          **March 9, 2015**

      Plaintiff Eugene Dews, acting *pro se*, brings this § 1983 action arising out of his medical care and treatment while serving his sentence in state prison. He asserts four causes of action in his complaint.[1] First, he claims that Dr. Jose Boggio, the physician who treated him, was deliberately indifferent to his serious medical needs in violation of the Eighth Amendment and retaliated against him for filing a grievance in violation of the First Amendment. Second, Dews asserts that Wexford Health Services, Inc. ("Wexford"), Dr. Boggio's employer, violated his Eighth and Fourteenth Amendment rights by failing to intervene on his behalf and denying him medical treatment. Third, he asserts that Joe Korsniak, the prison medical administrator, and Mike Wenerowicz, the prison superintendent, violated his Eighth Amendment rights against cruel and unusual punishment when they failed to intervene after Dr. Boggio cancelled his medication. Fourth, he complains that Korsniak and Wenerowicz violated his right to due process under the Fourteenth Amendment by failing to comply with prison grievance procedures.

---

[1] Dews originally filed a complaint on the standard prison-provided complaint form. He then filed a more detailed complaint. In response to the motion to dismiss, he filed a "complaint brief". Considering Dews' *pro se* status, we shall treat the facts alleged in the "complaint brief" as amendments to his earlier two complaints and refer to the three documents collectively as the complaint.

All defendants have moved to dismiss the complaint.  In his motion to dismiss, Dr. Boggio contends that Dews has failed to state causes of action based upon deliberate indifference to a serious medical need and retaliation.  He argues that Dews has alleged, at most, a claim for medical malpractice, which is not actionable under the Eighth Amendment.  He also argues that because Dews did not allege any adverse action, he has not stated a cause of action for retaliation under the First Amendment.

Wexford argues that Dews has not stated an Eighth Amendment claim because he did not allege that Wexford had acquiesced in or had knowledge of any unlawful practices.  Wenerowicz and Korsniak invoke Eleventh Amendment immunity.  They alternatively argue that Dews does not have a liberty interest protected by the Fourteenth Amendment and that they had no part in Dews' medical treatment.

Accepting the facts in the complaint as true and viewing them in the light most favorable to Dews, we conclude that Dews has stated both Eighth Amendment and First Amendment claims against Dr. Boggio.  He has not stated claims against the remaining defendants.  Therefore, we shall deny Dr. Boggio's motion, and grant the remaining defendants' motions.

## Facts[2]

According to his complaint, Dews' medical problems began in 2007 when he had major back surgery for spinal stenosis and a disc herniation.[3]  Though he was taking Ultram to manage his pain at the time, the prescription was discontinued sometime after the surgery.  Five years later, in 2012, Dews aggravated his back injuries while on an

---

[2] The facts recited are taken from the complaint.

[3] Compl. ¶ 11 (Doc. No. 1-2).

exercise regimen designed to manage his diabetes.[4]  He was again prescribed Ultram, which he received twice daily between 2012 and 2013.[5]

On June 11, 2013, Dews asked to have his Ultram dosage increased from two to three times a day.[6]  When he went to receive the medication the following day, he was told that Dr. Boggio had discontinued the prescription.[7]  Dews then spoke to Dr. Boggio, explaining that the medication helped alleviate his severe pain.  Without reviewing Dews' medical records, Dr. Boggio, told him that he did not need the medication.[8]  On June 16, 2013, Dews filed a grievance against Dr. Boggio for discontinuing the Ultram.[9]

On June 18, 2013, Dews received a single dose of Ultram.  When he returned the following day, he was told that the prescription was no longer active.[10]  When Dews confronted Dr. Boggio about the inactive prescription, he informed the doctor that he had filed a grievance against him.[11]  At that point, Dr. Boggio instructed the nurses not to do anything for him.[12]  A half hour later, Dews was told to return to his housing unit.[13]  Upon his arrival, Officer Sheaffer told him that Dr. Boggio had instructed him to

---

[4] *Id.* ¶¶ 14-15.

[5] *Id.* ¶¶ 15-17.

[6] *Id.* ¶¶ 18-21.

[7] *Id.* ¶ 22.

[8] *Id.* ¶¶ 27-28, 30.

[9] *Id.* ¶¶ 31.

[10] *Id.* ¶¶ 32-33.

[11] *Id.* ¶ 38.

[12] *Id.*

[13] *Id.* ¶ 39.

confiscate his medical pass and that his insulin prescription was being cancelled.[14] When Dews complained, Officer Sheaffer, after consulting with the unit manager, told Dews that he could keep his pass and Dr. Boggio would have to confiscate it himself.[15]

The following day, Dews' insulin prescription was cancelled.[16] That same day, he filed a second grievance against Dr. Boggio for cancelling his insulin prescription.[17] Dews returned to sick call two days later, suffering from blurred vision, excessive sweating, fatigue and nausea.[18] The nurses, after observing dangerously high blood sugar levels, reinstated his insulin and increased his dosage.[19]

Between June 24 and July 10, 2013, Dews sought medical attention several times for severe pain, numbness and bruising in his hips and radiating leg pain. Despite complaining that the pain interfered with his ability to walk, sleep and sit, he was repeatedly told that Dr. Boggio would not approve any medication orders.[20] Finally, on July 12, 2013, Dews saw Dr. Boggio for an evaluation and an Ultram prescription renewal.[21] Dr. Boggio prescribed a single dose of Vicodin for the pain.[22]

For the next four days, Dews did not receive Ultram or Vicodin. When he returned on June 16, 2013, the nurse told him that his Ultram prescription had not yet

---

[14] *Id.* ¶ 41.

[15] *Id.* ¶¶ 42-43.

[16] *Id.* ¶ 44.

[17] *Id.* ¶ 45.

[18] *Id.* ¶ 44.

[19] *Id.* ¶¶ 44, 46, 48-49.

[20] *Id.* ¶¶ 53-56.

[21] *Id.* ¶¶ 58-59.

[22] *Id.* ¶ 60.

been approved by a regional director at Wexford. She instructed him to continue on Vicodin for six days.[23] Wexford failed to approve orders for Dews to consult with an outside physician for his diabetes-related foot problems.[24] Three days later, on June 19, Dews returned to sick call to reorder Vicodin, which he continued to receive until October 15, 2013.[25] After suffering adverse side effects from the Vicodin, Dews returned to the medical unit on October 21, 2013, asking for Ultram instead.[26] Since October 28, 2013, he has been receiving Ultram.[27]

## Standard of Review

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). It must be sufficient to give the defendant "fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Although this standard "does not require 'detailed factual allegations, it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555).

A complaint is subject to dismissal if the plaintiff fails to plead factual content from which the court can reasonably infer that the defendant is liable. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The plaintiff must allege facts showing "more

---

[23] *Id.* ¶¶ 63-65.

[24] *Id.* ¶ 74.

[25] *Id.* ¶ 67.

[26] *Id.* ¶¶ 68-69.

[27] *Id.*

than a sheer possibility that a defendant has acted unlawfully." *Id.* Pleading only "facts that are 'merely consistent with' a defendant's liability" is insufficient and cannot survive a motion to dismiss. *Id.* (citing *Twombly*, 550 U.S. at 557).

When considering a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), all well-pleaded allegations in the complaint are accepted as true and viewed in the light most favorable to the plaintiff. *Holk v. Snapple Beverage Corp.*, 575 F.3d 329, 334 (3d Cir. 2009) (quoting *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008)). Additionally, the *pro se* plaintiff's pleadings must be considered deferentially, affording him the benefit of the doubt where one exists. *Dluhos v. Strasberg*, 321 F.3d 365, 369 (3d Cir. 2003) (citing *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002)). With these standards in mind, we shall accept as true the facts as they appear in the plaintiff's complaint[28] and draw all possible inferences from these facts in his favor.

### Analysis

### Dr. Boggio

Eighth Amendment Claim

The Eighth Amendment protection against cruel and unusual punishment extends to the prisoner's right to medical care. *Estelle v. Gamble*, 429 U.S. 97, 102, 103 (1976) (internal citations omitted). Thus, failure to provide adequate medical care

---

[28] Dews attached medical bills, medical diagnoses, his inmate grievances, attorney correspondence, diabetes information, news articles, prison certificates and affidavits from other inmates to his response brief. *See* Pl's Resp. in Opp'n to Mot. to Dismiss at ECF 23-40 (Doc. No. 30-1). Dr. Boggio and Wexford provided the grievances, appeals, the correctional facility's responses, correspondence with grievance coordinators, medical consultation records, and various miscellaneous institutional forms, including an outside purchase approval form. *See* Defs' Mot. to Dismiss at ECF 11 (Doc. No. 24-6).

violates a prisoner's right to be free from cruel and unusual punishment when it results from "deliberate indifference to a prisoner's serious illness or injury."  *Id.* at 104-05.

To state an Eighth Amendment claim arising out of the failure to treat his medical condition, Dews must plead sufficient facts that, if proven, would establish two elements: (1) he had a serious medical need; and (2) prison officials were deliberately indifferent to that need.  *Spruill v. Gillis*, 372 F.3d 218, 235-36 (3d Cir. 2004).

A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention."  *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987).  A medical condition is serious when the denial or delay of medical treatment causes "unnecessary or wanton infliction of pain." *Id.* at 347.

Dews has alleged a serious medical need.  His diabetic condition required insulin.  He also had a documented history of back pain treated by prescription medication.  He complained of severe pain, numbness, bruising and radiating leg pain. His symptoms affected his sleep and his ability to ambulate.  In *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004), the Third Circuit concluded that the prisoner's back condition, which required "significant and continuous medication, and . . . caused him excruciating pain," was a serious medical need for purposes of the Eighth Amendment.  *Id.* at 236. Thus, Dews has alleged the requisite serious medical need.

Deliberate indifference to a serious medical need is shown when: (1) a doctor intentionally inflicts pain on a prisoner; (2) a prison official denies reasonable requests for medical treatment, exposing the inmate to undue suffering or the threat of tangible

residual injury; or (3) an official intentionally refuses to provide care even though he is aware of the need for such care. *Spruill*, 372 F.3d at 235. A prison official is deliberately indifferent if he disregards a known excessive risk to the inmate's health and safety. It is not enough that the official is aware of facts from which an inference can be drawn that the inmate is exposed to a substantial risk of serious harm. The official must actually draw that inference. *Farmer v. Brennan*, 511 U.S. 825, 837-38 (1994).

Medical malpractice is insufficient to establish a constitutional violation. *Estelle*, 429 U.S. at 105-06; *Monmouth Cnty. Corr. Institutional Inmates*, 834 F. 2d at 347. Likewise, disagreement as to proper medical treatment does not establish an Eighth Amendment violation. *Spruill*, 372 F.3d at 235.

Dr. Boggio summarily dismissed Dews' complaints of severe back pain and the need for Ultram to manage his pain. He refused to review the medical record, which documented multiple back surgeries, a history of back pain, and uninterrupted Ultram renewals by prior physicians. Dews did not receive his medication from June 18 until July 12, 2013 because Dr. Boggio refused to prescribe it.[29] Though Dr. Boggio did order Dews a week's supply of Ultram, Dews only received a single dose on June 18, 2013.[30] Additionally, Dr. Boggio interfered with other health care workers' attempts to provide Dews with medication.[31]

Dews went to sick call numerous times between June 12 and June 20, 2013, complaining of pain and numbness in his hips and legs, which interfered with his ability

---

[29] Compl. ¶¶ 52, 54-55, 59.

[30] *Id.* ¶¶ 30-33.

[31] *Id.* ¶¶ 55-56.

8

to walk, sleep and sit. He returned again several times between June 26 and July 10, 2013 due to severe pain.

Withholding pain medication from a prisoner who is in pain may constitute deliberate indifference to a serious medical need. Dr. Boggio may have made a reasoned medical decision or may have been negligent in not treating Dews with medication. But, at this stage, we cannot determine whether Dr. Boggio's discontinuance of certain medication was an exercise of his professional medical judgment. We look only to Dews' allegations.

The dispute is not about a disagreement over appropriate medical treatment. Rather, Dews alleges that despite the need to alleviate his serious and debilitating back pain, Dr. Boggio deliberately withheld his prescription for pain-killing medication and insulin because Dews had complained to prison authorities about the doctor's actions. These facts, if proven, could show that Dr. Boggio acted with deliberate indifference and in retaliation for Dews filing a grievance against him. Therefore, we conclude Dews has stated an Eighth Amendment claim against Dr. Boggio.

### First Amendment Claim

In the preamble to his type-written amended complaint, Dews added in handwriting: "and the First Amendment Right."[32] Giving Dews the benefit of the doubt as a *pro se* litigant, we construe his retaliation claim as one arising out of the exercise of his right under the First Amendment.

To state a retaliation claim, Dews must allege facts showing: (1) the conduct that instigated the retaliatory action was constitutionally protected; (2) he suffered an adverse action as a result of the prison official's retaliatory acts; and (3) there was a

---

[32] Compl. at 1 (Doc. No. 1-2).

causal link between the exercise of his constitutional right and the adverse action, that is, his constitutionally protected conduct was a substantial or motivating factor in the state actor's decision to take the adverse action. *Rauser v. Horn*, 241 F. 3d 330, 333 (3d Cir. 2001).

Dews has alleged that he exercised his First Amendment right when he filed his grievances. Filing a prison grievance is protected activity. *Anderson v. Davilla*, 125 F.3d 148 (3d Cir. 2001). Dews also contends that his grievance precipitated the retaliatory action.

As the complaint reads, Dr. Boggio discontinued Dews' Ultram medication before he ever filed a grievance.[33] Under those circumstances, Dr. Boggio's cancelling the pain prescription could not have been in retaliation for Dews filing a grievance against him for failing to provide the pain medication. However, Dr. Boggio's withholding the insulin necessary to control Dews' diabetes followed his filing a grievance.[34] Dews contends Dr. Boggio did so in retaliation for his filing the grievance.

Withholding medical treatment may constitute an adverse action likely to deter a prisoner from filing additional grievances. However, Dews was not deterred. Indeed, to the contrary, he continued to pursue his complaint through the grievance process. When his insulin prescription was cancelled on June 19, Dews did not refrain from filing another grievance against the doctor that same day.

Boggio and Wexford argue that because Dews continued to file grievances related to his medical treatment, he suffered no adverse action. But, as Dews alleges, he did. His insulin was stopped.

---

[33] *Id.* ¶ 31.

[34] *Id.* ¶¶ 40-44.

Not all actions taken by prison officials rise to the level of an actionable adverse action. To sift trivial claims from actionable ones, courts have required that an adverse action must be "sufficient to deter a person of ordinary firmness from exercising his constitutional rights." *Allah v. Seiverling*, 229 F.3d 220, 225 (3d Cir. 2000). This standard does not require the prisoner to show that the adverse action actually deterred him. The action need only be capable of deterring one of "ordinary firmness" from acting. *Id.* To require more would effectively endorse adverse actions taken by prison officials. If the adverse action was so severe that the prisoner refrained from pursuing his constitutional rights, there could be no redress for a constitutional violation. In that event, the adverse action would have successfully resulted in the prisoner giving up his rights. In other words, as a result of the adverse action or the threat of continuing adverse action, the prisoner would abandon his attempt to vindicate his rights and there would be no determination that his rights had been violated in the first place.

Dews has alleged that Dr. Boggio's discontinuation of his insulin was in retaliation for pursuing his complaints through the prison grievance process. Drawing all inferences in Dews' favor, one could conclude that "a person of ordinary firmness" would have stopped complaining or exercising his right to pursue his grievances in the face of the actual or threatened withholding of his necessary medication. Thus, he has stated a cause of action for First Amendment retaliation.

## Punitive Damages

Punitive damages may be assessed in a § 1983 action when the defendant acted with evil motive or intent, or with reckless or callous indifference to the plaintiff's federally protected rights. *Smith v. Wade*, 461 U.S. 30, 35 (1983) (citing *Carlson v.*

*Green*, 446 U.S. 14, 22 (1980)).  Reckless indifference has been equated to deliberate indifference to a substantial risk of serious harm.  *Farmer*, 511 U.S. at 836 (holding that "acting . . . with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk.").

Dews has alleged sufficient facts showing that Dr. Boggio acted with deliberate and reckless indifference to his serious medical needs.  He attributes this conduct to Dr. Boggio's retaliatory motive.  These allegations are sufficient to allow the punitive damages claim to proceed at this time.

### Wexford Health Services, Inc.

Dews alleges that Wexford failed to intervene on his behalf and denied him medication.  He essentially seeks to hold Wexford liable for Dr. Boggio's conduct.

Under the Eighth and Fourteenth Amendments, a defendant cannot be held liable based solely on the doctrine of *respondeat superior*.  *Rouse*, 182 F.3d at 200.  It is "well-settled that liability under § 1983 may not be based on the doctrine of respondeat superior."  *Id*.  Dews has not alleged any other basis for holding Wexford liable.

A corporation acting on behalf of the state can be liable where it instituted a policy, practice or custom that resulted in the plaintiff's constitutional injury.  *Natale v. Camden Cnty Corr. Facility,* 318 F.3d 575, 581, 583-84 (3d Cir. 2003).  To show that Dr. Boggio's actions were the result of a Wexford policy or custom, Dews must prove that: (1) Wexford promulgated a policy statement and the injurious act occurred as a result of the implementation of that policy; (2) Wexford violated a federal law; or (3) it was

deliberately indifferent to the need for action to correct an inadequate practice that is likely to result in a constitutional violation and fails to act. *Id.* at 584 (3d Cir. 2003).

Here, Dews alleges that Wexford violated his Eighth Amendment right by failing to intervene on his behalf when Dr. Boggio cancelled his Ultram prescription. Dews does not claim that Wexford knew or should have known Dr. Boggio was engaged in an unlawful practice. Though he states that a regional director was required to approve his Ultram prescription, he does not suggest that Wexford acquiesced in or was aware of the delay or Dr. Boggio's conduct.

Similarly, Dews alleges that "someone from Wexford" denied Dr. Boggio's seven day order for Ultram and only approved a single dosage on the last day the prescription was valid.[35] Again, Dews does not state facts that suggest that Wexford was aware of this delay. This conclusion is based on mere conjecture. Therefore, Dews has not stated a constitutional violation by Wexford.

## Wenerowicz and Korsniak

Dews sues the DOC defendants in both their official and individual capacities. A government official, acting in his official capacity, is not a "person" subject to suit under 42 U.S.C. § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Accordingly, all claims for compensatory relief against the DOC defendants in their official capacities must be dismissed.

Dews claims that his grievances put the DOC defendants on notice of the inadequate medical treatment. He argues that they were required to compel the medical defendants to provide him medication. His allegation rests upon the premise

---

[35] Compl. ¶¶ 32, 36.

that prison officials can and should second guess the medical decisions of competent health care providers.

Contrary to Dews' position, the DOC defendants were under no obligation to interfere with the medical defendants' treatment plan or overrule their medical judgment. When a prisoner is under the care of a physician, non-medical prison officials are "justified in believing that the prisoner is in capable hands."  *Spruill*, 372 F.3d at 236. Non-medical prison personnel are not chargeable with deliberate indifference for withholding specific treatment from a prisoner unless they knew or should have known that medical personnel were mistreating or failing to treat a prisoner.  *Id.*  Dews has not alleged that the DOC defendants participated in making medical decisions affecting him. Thus, he has failed to state a claim of deliberate indifference against them.

Reviewing a prisoner's grievance relating to medical care alone is insufficient to impute knowledge to a prison official.  *Glenn v. Barua*, 252 F. App'x 493, 498 (3d Cir. 2007).  The Eighth Amendment requires no more of the grievance examiner than he "review the prisoner's complaints and verify with the medical officials that the prisoner was receiving treatment." *Id.* (internal citations and quotations omitted).

Prisoners "are not constitutionally entitled to a grievance procedure and the state creation of such a procedure does not create a liberty interest requiring procedural protections under the Fourteenth Amendment."  *Booth v. King*, 346 F. Supp. 2d 751, 761 (E.D. Pa. 2004).  Furthermore, "administrative review of prison disciplinary hearings is not constitutionally guaranteed."  *Garfield v. Davis*, 566 F. Supp. 1069, 1074 (E.D. Pa. 1983).  Therefore, a prisoner's due process rights are not violated when prison officials fail to respond to grievances.  *Booth*, 346 F. Supp. 2d at 761; *see also Griffin v. Vaughn*,

112 F.3d 703, 708 (3d Cir. 1997) (stating that "a state statute or regulation conferring a right is not alone enough to trigger due process.")[36]

Dews bases his Fourteenth Amendment claim on Korsniak and Wenerowicz's failure to comply with state grievance procedures. Dews does not have a liberty interest that would support a Due Process claim. Indeed, Dews himself admits that he does not have a constitutional right to an inmate grievance system. Therefore, the DOC defendants' motion to dismiss will be granted.

## Conclusion

Dews has stated First Amendment and Eighth Amendment claims against Dr. Boggio. He has failed to state any claim against the remaining defendants.

---

[36] *See also Simonton v. Tennis*, 437 F. App'x. 60, 62-63 (3d Cir. 2011) (stating that a "prison official's secondary review of an inmate's grievance or appeal is not sufficient to demonstrate the personal involvement required to establish the deprivation of a constitutional right").